IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE ADOPTION OF THEODORE L.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE ADOPTION OF THEODORE L., A MINOR CHILD.

BRITTANY B. AND TYSON L., APPELLANTS,

V.

HALEY L., APPELLEE.


Filed February 8, 2022.    No. A-21-331.


Appeal from the County Court for Douglas County: JEFFREY L. MARCUZZO, Judge. Affirmed.

Jeffrey A. Wagner and Benjamin L. Bramblett, of Wagner, Meehan & Watson, L.L.P, for appellants.

Kelly T. Shattuck, of Vacanti Shattuck, and Tara A. Wrighton, of Shefren Law Offices, P.C., L.L.O, for appellee.


MOORE, ARTERBURN, and WELCH, Judges.

MOORE, Judge.

INTRODUCTION

Brittany B. and Tyson L. appeal from an order of the county court for Douglas County finding that Brittany B., as a stepparent, could not adopt Theodore L. The trial court found that Brittany and Tyson failed to show by clear and convincing evidence that Haley L., Theodore's biological mother, had abandoned Theodore, and it dismissed Brittany's petition for adoption. Based on the reasons that follow, we affirm.

STATEMENT OF FACTS

Tyson and Haley are the biological parents of Theodore, born in February 2012. They were divorced in March 2016. Brittany is Tyson's wife, who wants to adopt Theodore. In August 2020, Brittany and Tyson filed a petition for adoption. The petition alleged that Haley had abandoned Theodore within the meaning of Neb. Rev. Stat. § 43-104(2)(b) (Reissue 2016), and therefore, Haley's consent to the adoption was not necessary. The following evidence was adduced at a March 2021 trial on the matter.

*Procedural History.*

Tyson's and Haley's marriage was dissolved by a decree of the district court for Holt County on March 22, 2016. The parenting plan agreement contained in the divorce decree awarded primary physical custody to Haley, subject to Tyson's parenting time. Sometime after their divorce, Tyson moved to Douglas County and Haley moved to Sarpy County. Tyson testified that he sought a modification to the parenting plan in early 2017 out of concern that Haley was using an "excessive amount of alcohol and possibly drugs" and that Theodore was not being properly cared for. Tyson stated that a 2017 order for modification of the parenting plan made him the "sole physical and legal guardian of Theodore." This 2017 order for modification is not included in our record.

Tyson's concerns regarding Haley's substance use persisted and he sought another modification of the parenting plan in 2019. On October 2, the district court for Douglas County entered an order, finding that Haley's "significant mental health and substance abuse issues" created a substantial and material change in circumstances. The modification order maintained Tyson's sole legal and physical custody of Theodore and adopted Tyson's 11-page proposed parenting plan. The new parenting plan included five stages that Haley was required to complete before she would be permitted to have unsupervised weekend visitation with Theodore. The stages of the plan corresponded to levels of visit supervision and length of visit time, with the plan allowing decreased supervision and longer visits as Haley progressed through the outlined stages.

Stage one of the parenting plan required that Haley show that she has:

1. Entered into counseling to manage her mental health issues, and can openly document evidence of counseling administered by licensed professional for a minimum of two sessions during the proceeding one month; and

2. Not failed any hair follicle drug test because of any substances in her body listed [sic] the federal government's-controlled substances act schedule 1-4 in the preceding one month. Terms of testing are as follows:

a. The Father may request via email that the Mother (at the Mother's expense) go receive a hair follicle drug test from a state approved facility at any time, but no more [sic] two (2) times in a calendar month.

b. The Mother has forty-eight (48) hours to complete the drug test and notify the Father the test is complete.

c. The Father shall have access to all results directly from the facility. Should the Mother fail to complete the drug test within forty-eight (48) hours and notify the Father, it will be considered [sic] failing test;

3. The Father may request a well-check to be conducted by the local sheriff's office or CPS at any time to ensure the safety of the Mother's living environment regardless if the minor child is present or not. Should the Mother fail to comply with the well-check, it will be considered as failing a stated objective. . . .

Stage one of the parenting plan also requires Haley to inform Tyson that she plans to exercise her parenting time at least 2 weeks in advance of the visit, and that the visit be supervised by an individual of Tyson's choosing or a state-approved third party at Haley's expense.

The 2019 order for modification reflects that Haley had been personally served on July 1. Tyson testified that Haley did not participate in the proceeding or file an appeal to the order of modification. Haley testified that she was not involved in modifying the parenting plan because she did not have any legal representation, was homeless at the time, and thought it would do "more harm than good" to be present at the hearing.

On August 5, 2020, Tyson and Brittany filed a petition for adoption in the county court for Douglas County. Tyson testified that when he filed for adoption, he believed that Haley no longer wanted a relationship with Theodore. Haley testified that she had not been served and that she did not know about the adoption proceedings until December.

*Haley's Relationship With Theodore.*

Haley testified that from the time of the 2016 divorce decree to the 2019 order for modification, she and Theodore were "very, very close." The two of them enjoyed attending craft fairs and gardening together. Haley stated that she attended Theodore's extracurricular activities and was always present at her parenting time until the 2019 order for modification. Haley's mother testified that Haley has "often" expressed a desire to see Theodore.

*Haley's Substance Abuse and Rehabilitation.*

Haley testified that she has been diagnosed with generalized anxiety disorder, major depressive disorder, ADHD, and post-traumatic stress disorder. In early 2019, Haley lost her health insurance, and by April, she was unable to afford her antidepressant medication. Soon after, she began self-medicating her mental health issues with alcohol and marijuana. Haley testified that after the 2019 order for modification was entered and she was prevented from seeing Theodore, she "spiraled down" and began using methamphetamine in addition to alcohol and marijuana.

Haley began participating in drug court in July 2020. Haley testified that she was in phase two of drug court, which requires Haley attend three Alcoholics Anonymous meetings a week, submit to randomized drug tests, meet with her drug court counselor biweekly, and attend a mental health rehabilitation class. Haley acknowledged that she had been sanctioned through the drug court for noncompliance in July, shortly after she began the program, but noted that she has not been sanctioned or tested positive for drugs since then. Haley testified that she recently re-accessed Medicaid, which made her medications affordable to her, and she has been consistently taking her medications.

Haley's mother testified that while she shared Tyson's concerns regarding Haley's drug use in 2019, Haley has made progress in managing her addiction through the drug court program.

Haley has been in counseling with her current therapist since November 2020. Haley testified that prior to starting counseling, she had participated in inpatient treatment from September to October. Haley's therapist, a licensed mental health practitioner, testified that she has seen Haley for a total of 14 sessions. Haley's therapeutic goals include improving her coping skills and supporting her abstinence from substances. Haley's therapist noted that Haley attends sessions consistently, is engaged, and is forthcoming in her therapeutic disclosures. Haley's therapist is in communication with the drug court treatment coordinator and testified that those communications inform Haley's treatment goals. Haley's therapist stated that she and Haley discuss Theodore in every session. Both Haley and her therapist testified that the therapist sent Tyson letters evidencing Haley's recent counseling sessions.

*Haley's Requests for Contact.*

Tyson testified that the last time Haley had in-person contact with Theodore was in April 2019. Haley requested phone contact with Theodore in May, June, and July, but Tyson testified he denied these requests because there was an "ex parte order" at the time which prohibited contact between Haley and Theodore. This ex parte order is not included in our record. Haley then requested phone contact with Theodore in November, which Tyson denied, citing Haley's noncompliance with the 2019 order for modification.

Tyson acknowledged that he sent Haley emails in April and May 2019, prior to the October order for modification, in which he denied Haley parenting time during her designated weekends. Emails entered into evidence also reference Haley texting and video calling Tyson in June and July in an effort to connect with Theodore. In the emails, Haley also requested the dates of Theodore's games and activities and expressed concern for Theodore. Haley again emailed in November asking for a visit with Theodore and informing Tyson that Haley's mother and sister would be available to supervise the visit. Tyson again denied this visit, directing Haley to follow the steps outlined in the 2019 order for modification. In addition to the emails, Haley testified to calling Tyson "over and over, many, many times" in attempts to contact Theodore.

Both Tyson and Haley agree that Haley did not contact Tyson in an effort to see Theodore from November 2019 to November 2020. Haley testified that she believed she "would be in trouble" if she attempted to have any contact with Theodore before she fulfilled the requirements of the 2019 order for modification.

In November 2020, unaware of Brittany and Tyson's petition for adoption, Haley emailed Tyson to inform him that she had completed the requirements of stage one of the parenting plan and was requesting parenting time with Theodore. Haley testified that she had seen a therapist two times within the last month, had notified Tyson 2 weeks in advance of her desire to have parenting time with Theodore, and provided Tyson with her current address for the purpose of submitting to a well-check if requested by Tyson. In the email, Haley also stated her preference for a state-approved third party to supervise her visit with Theodore and noted that she would incur the cost of the supervision.

Haley testified that a week after she requested parenting time with Theodore, Tyson asked her to complete a hair follicle test. Haley completed a hair follicle test the day of Tyson's request and the results were sent directly to Tyson a few days after testing.

Tyson testified that he had received a letter from Haley's therapist, stating that Haley was currently receiving counseling, and a negative hair follicle test directly from the testing facility. However, Tyson denied Haley's request for parenting time and did not allow Haley any communication with Theodore. Haley testified that Tyson cited the upcoming adoption hearing as the reason why he would not allow Haley to have contact with Theodore.

Following Tyson's denial of her request for parenting time, Haley testified that she filed a contempt action against Tyson, which was then continued due to the upcoming adoption hearing. This filing is not included in our record. Tyson also testified that since Haley's November 2020 request for parenting time, she has contacted Tyson every 2 weeks to ask for time with Theodore.

When asked why Haley did not comply with the 2019 order for modification immediately after it was entered, Haley testified that, at the time, she could not afford a hair follicle test or to pay for someone to supervise her visit with Theodore. She was also unaware of any free counseling services.

*Haley's Financial and Other Support.*

Child support payment records submitted into evidence reflect that since October 2017, Haley has had a $50 monthly child support obligation. Tyson testified that Haley was delinquent in her child support payments from June 2019 until December 2020. Haley's mother paid over $900 in child support in December 2020. Following this large payment by Haley's mother, the evidence reflects that Haley's monthly obligation has been consistently paid within a few day after the payment due date. Haley testified that she currently receives disability benefits and has been making child support payments out of those benefits and her COVID-19 stimulus funds.

Tyson testified that from November 2019 until August 2020, Haley did not send Theodore any cards, letters, or gifts. Haley testified that while she did not send cards, letters, or gifts to Theodore through Tyson, she has those items for Theodore at her home. Haley believed that Tyson and Brittany would not accept cards or gifts from her. Haley also understood the 2019 order for modification to state that she was not allowed to have any contact with Theodore, and so believed that sending cards and gifts to Theodore would violate the court order. Haley's mother also testified that Haley has purchased birthday and Christmas gifts for Theodore and has stored the gifts at Haley's mother's home.

*Order and Finding on Abandonment.*

In an order entered on March 19, 2021, the trial court found that Brittany and Tyson failed to prove by clear and convincing evidence that Haley had abandoned Theodore, and it dismissed the petition for adoption.

Brittany and Tyson appeal.

ASSIGNMENT OF ERROR

Brittany and Tyson assign that the trial court erred in finding that Haley had not abandoned Theodore.

STANDARD OF REVIEW

Appeals in adoption proceedings are reviewed by an appellate court for error appearing on the record. When reviewing a judgment for errors appearing on the record, the inquiry is whether

the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *In re Adoption of Micah H.*, 301 Neb. 437, 918 N.W.2d 834 (2018).

ANALYSIS

Brittany and Tyson assign that the trial court erred in finding that Haley had not abandoned Theodore.

Generally, for a court to grant an adoption petition, Neb. Rev. Stat. § 43-104(1) (Reissue 2016) requires that the biological parent of the child must execute written consent to the adoption. However, under § 43-104(2)(b), consent is not required when a parent has "abandoned the child for at least six months next preceding the filing of the adoption petition."

In order for a court to find that abandonment has occurred, the petitioning party bears the burden of proving by clear and convincing evidence that the parent abandoned the child. *In re Adoption of Micah H., supra*. The Nebraska Supreme Court has defined the word "abandoned" when used in the context of adoption proceedings. To constitute abandonment, it must appear that there has been, by the parents, a giving up or total desertion of the minor child. *Id*. In other words, there must be shown an absolute relinquishment of the custody and control of the minor and thus the laying aside by the parents of all care for the minor. *Id*. The Supreme Court has further noted that abandonment may be found where there is willful or intentional conduct on the part of the parent which evinces a settled purpose to forgo all parental duties and relinquish all parental claims to the child, or a willful neglect and refusal to perform the natural and legal obligations of parental care and support. *Id*.

The conduct constituting abandonment as defined above must appear by clear and convincing evidence to be willful, intentional, or voluntary, without just cause or excuse. *Id*. As a general rule, adoption statutes will be construed strictly in favor of the rights of the natural parents in controversies involving termination of the relation of the parent and child. This is especially true in those cases where it is claimed that owing to the willful abandonment of the child, the consent of the parent to the adoption is not required. *Id*.

Pursuant to § 43-104(2)(b), the critical period of time during which abandonment must be shown is the 6 months immediately preceding the filing of the adoption petition. However, various definitions of abandonment do not require us to view this statutory period in a vacuum. One may consider the evidence of a parent's conduct, either before or after the statutory period, because this evidence is relevant to a determination of whether the purpose and intent of that parent was to abandon his or her child or children. *In re Adoption of Micah H.*, 301 Neb. 437, 918 N.W.2d 834 (2018).

Brittany and Tyson argue that by Haley's actions, she has repudiated her parent-child relationship with Theodore. The evidence showed that in the 6 months before the petition was filed (February 5 to August 5, 2020), Haley had no contact with Theodore, nor contacted Tyson in an effort to reach Theodore. However, Haley testified that she believed the October 2019 order for modification prevented her from having any contact with Theodore before she completed the requirements of stage one of the parenting plan. Haley also began participating in a drug court program in July 2020 in an effort to manage her substance abuse, an implicit requirement of stage one of the parenting plan.

Additionally, as previously stated, evidence of a parent's conduct before and after the statutory 6-month period is also relevant to determine whether the purpose or intent of the parent was to abandon the child. See *id*. In considering the time prior to the 6-month timeframe, there was evidence that Haley and Theodore had a close relationship for the first 7 years of Theodore's life. Haley lived with Theodore until he was 5 years old and, after Tyson attained sole custody of Theodore in 2017, saw him on a regular basis during her parenting time. Haley testified that she and Theodore would do various activities together and that she would support him at his extracurricular events. Haley's mother testified that Haley would often express a desire to see Theodore.

There was also evidence that Tyson had denied Haley parenting time during her designated weekends in April and May 2019. Haley requested phone calls with Theodore in May, June, July, and November. Haley texted and video called Tyson in June and July in an effort to reach Theodore. In November, Haley emailed Tyson requesting parenting time with Theodore. Haley also testified to calling Tyson repeatedly in 2019 to speak to Theodore. Both Haley and her mother testified that Haley had purchased Theodore birthday and Christmas gifts and was storing the gifts until Haley was permitted to see Theodore.

After the petition was filed, Haley emailed Tyson in November 2020 to inform him that she had met all of the requirements of stage one of the parenting plan and was requesting parenting time with Theodore. Haley had started counseling, provided Tyson with a negative hair follicle test at his request, provided her address for a well-check, and had agreed to cover the cost of a third-party to supervise her visit. When Tyson denied Haley's November request for parenting time, Haley testified that she filed a contempt action against Tyson and Tyson testified that Haley began calling him every 2 weeks to ask for time with Theodore. In January 2021, Haley resumed paying her monthly child support obligation consistently.

To constitute abandonment, it must appear that there has been, by the parents, a giving up or total desertion of the minor child. *In re Adoption of Micah H., supra*. The question of abandonment is largely one of intent to be determined in each case from all the facts and circumstances. *In re Adoption of David C.*, 280 Neb. 719, 790 N.W.2d 205 (2010). Further, adoption statutes will be construed strictly in favor of the rights of the natural parents in controversies involving termination of the relation of the parent and child. *Id*. Based on the record before us, Haley has not given up or totally deserted Theodore. Although Haley's efforts to have contact with Theodore have been sporadic and limited, and her actual contact nominal, the evidence demonstrates her desire and intent to reestablish a parent-child relationship. Therefore, the evidence is not clear and convincing that Haley abandoned Theodore.

## CONCLUSION

We conclude that the trial court did not err in finding that Haley had not abandoned Theodore and, therefore, did not err in dismissing Brittany's petition for adoption. Accordingly, the decision of the county court is affirmed.

AFFIRMED.